The next case is Case No. 16-1199, Rhonda Kaufman v. CVS Caremark Corp. Good morning, your honors. Brian Tenney on behalf of the plaintiff, Rhonda Kaufman. I'd like to try to reserve three minutes for rebuttal. You may. In this case, Ms. Kaufman is challenging several statements on CVS's vitamin E supplement bottles. The most prominent of those statements is on the front of the bottle. In bolded language, it says the phrase, heart health. Now, the reasoning consumer sees that statement and believes that if they buy that supplement and ingest it, it will have some benefit to their heart health. But after study after study in the last decade have conclusively shown that vitamin E supplementation offers no cardiovascular benefits, that statement is objectively false. If you look to the statements on the back of the label, and there are several cases around the country, from Williams to Ackerman to Silva, that say a consumer is not expected to look to the back of the label to verify that statements on the front of the label are actually true. I have a question. I thought the FDA itself had given as an example of precisely what's okay is the statement helps promote urinary tract health. If that's an example that the FDA gives us of what is a proper function claim, then how is heart health different than urinary tract health? So, Your Honor, when the FDA gives that example, what it is doing is giving you the example of the difference between a structured function claim that doesn't need prior approval and a disease claim that does. But that does not relieve a manufacturer of making a structured function claim of the duty that the claim itself must be both true and not misleading. Okay, so you agree then that what we're talking about here is a structured function claim? Yes, Your Honor, absolutely. And so, as I understand it, what those claims basically say is you need vitamin E in your body. And if you don't have it, you're in trouble. That would be, you know, that is not the exact statement at issue here. That's the nature of a structured function claim. And then how is, since they then say they use, it seemed to me, virtually the exact same language as the FDA examples, that it supports heart health, where the FDA uses an example, it's okay to say supports immune system, as long as you have some backup that that vitamin supports that function. Right. And, Your Honor, here again we're saying that not only do we think that statement is false, which is maybe up for a scientific debate, but it is also misleading. And I think a good example of the difference here between the types of structured function claims, there's a whole range of structured function claims somebody could make from a very specific claim about how the nutrient or whatever the supplement is actually functions in the body, to one that's a little closer to the line, which is what we have here. It's more generic. It just says helps maintain healthy blood vessels and supports heart health. Compare that to the statement. What am I missing? You'd have no heart health if you had no vitamin E. Well, along those same lines, you could put on a package of bottled water that it also supports heart health, because without hot water your heart would wither and die. But isn't that precisely the distinction for reasons that I don't necessarily understand the FDA has said? They say you can say this helps promote or supports health, but you can't say it prevents disease. And, again, even though they say it might be appropriate and we would classify as a structured function claim a claim that says promotes something health, promotes immune health, promotes heart health, that doesn't necessarily mean that when you put that statement on your label of whatever supplement you're selling that it is truthful and not misleading. And what I was going to do was compare the statements at issue in this litigation with those on the Walgreens label in the Trujillo case, because there is a much more specific, probably not authorized, but probably an okay statement about the vitamin E's structure and function in the body than in the Trujillo. Before you do that, can we just stick on the health point? Because given that the FDA has said that an equivalent statement with respect to the vitamin E situation is potentially fine, even though it's more general than what you're about to discuss, for you to win, what you could win, I suppose, would be to say that it just so happens that this statement is false, even if a statement about your vitamin E tract health wouldn't be false. As I understand it, the reason that you're saying this could be false is because there are studies saying that vitamin E is harmful. It's different than saying it's just misleading because you're leading people to think it will cure disease. You point to studies in your complaint of that statement that says, actually, this just isn't like water. It's bad to take vitamin E. Is that your position? That's exactly right. And if we have to fall all the way back to that place, that, I think, is an aspect of this case that you can't really argue with. I mean, as the court in Breitach and the court most recently in the Doucher, in the Nature's Bounty case found, and in their case, in fact, if you've got an element like vitamin E that has been found to actively damage the heart, then any statement that it supports heart health is going to be false. Now, what do we do with respect to the preemption issue, though? Because that just takes you back to the substantiation point, which is, in your complaint, you point to a study, maybe two, that makes some claims about the possible harmful effects of vitamin E. The purveyor of the label puts out a label saying there's vitamin E. They say we've got a lot of studies that we think don't necessarily prove disease. We're not claiming that it protects disease, but it could mean one to think there's some beneficial effects. At the pleading stage, is it enough for you to point to a study or two that says it's harmful in order to get past the pleading stage as to whether or not we're standing, even assuming preemption applies, that they haven't substantiated that? And the additional fact to add to that is that it's the most recent two studies that have found that, that we cited in the complaint, and there's a third that we cite now breaking to this court that we didn't have below, but it just furthers that same evaluation that vitamin E supplementation not only does not offer any cardiovascular benefit, it actually can raise the risk of all-cause mortality due to CBD events. But you're talking about vitamin E supplementation, right? And doesn't the FDA focus us on first we look at the nutrient. We ask if it's a structure function allegation, which you've agreed it is here. We then ask is there evidence in the literature that that particular nutrient, not supplements, but rather that nutrient, helps promote health in that. And all these studies show vitamin E in proper amounts, acts as an antioxidant, and promotes health in the sense that if we didn't have it, we'd be out of luck. Now, I think what you're then saying is yes, but it can be harmful if you take too much, i.e. through supplementation. That's true of everything, though, isn't it? No, not necessarily. I don't know, I'd have to think about that more if I would say that that applies. Too much of everything is going to be bad for you. But in this specific instance, you're talking about you're selling vitamin E supplements. The studies show that vitamin E supplements can damage the heart. There's a statement on the front of the label that isn't talking about just the nutrients. It's talking about the supplement that's being sold there that says heart health. The idea being I'm paying money for something heart health. That's going to be a benefit, not a detriment. I understand that makes a lot of sense to me, but I'm not sure it makes sense to the FDA because they don't seem to draw that distinction between the nutrient and statements about the nutrient and then a supplement and having to have independent focus on the nutrient as a supplement. That's where I'm missing the link in your argument. This is what I think brings me back to what I was going to do with the comparison to the label on Trufillo because what the FDA is doing in this regime is they're saying, listen, we don't have the resources. We don't want to make you wait to approve every label that's going on in the supplement. We recognize that there are some scientifically established facts about certain nutrients that are kind of unassailable. We want to make that statement about how it functions in your body. Go ahead, we want to approve it. But that does not relieve your duty to make sure that they're truthful and accurate. And so a manufacturer has to make a marketing decision. Well, how specific a statement am I going to make? And Walgreens made a very specific statement. The statement in Walgreens about the structure function of vitamin E is, quote, vitamin E naturally contributes to cardiovascular health by helping to protect LDL cholesterol from oxidation, which may cause cellular damage, unquote. That's very specific. I think most scientists would agree with that. There is a leap between that statement and the one that is made on CVS's labels, which just simply says helps maintain healthy blood vessels and supports heart health. That statement, we say, is false. Even if it's technically true, we say it is still misleading because it is inviting a consumer to read into that very generic statement that vitamin E, even the nutrient, has some special benefit to the heart. Well, if it did have some special benefit to the heart by keeping arteries clear, by maintaining the strength of the cellular composition of the blood vessels, then it would manifest itself in some material way in the studies evaluating vitamin E supplementation on the endpoints of cardiovascular disease or other cardiovascular incidents. It does not. It has been conclusively shown for the last decade that it offers absolutely no cardiovascular benefit, that is, vitamin E supplementation. That actually brings me to what is almost a footnote so far in this litigation or on appeal, which is the veracity of the unjust enrichment claim. That claim is not necessarily derivative of the GBL-349 claim, and it goes to exactly what we're talking about here, the difference between a nutrient and a supplement. Even if everything on the label is found to be an accurate structure function claim and is not misleading, it may still be unjust for defendants because those are statements about the nutrient. It might still be unjust for CVS to sell to consumers a supplement that it knows offers absolutely no cardiovascular benefit to a consumer that is not vitamin E deficient, and the number of consumers in the United States that are vitamin E deficient is infinitesimally small. It would still be unjust for them to sell that product knowing it offers no benefit but yet to keep the proceeds of the sale. On the studies, how do you deal with the Lee study that is cited to us where it reports arthrogenesis reduction, that vitamin E plays a form function in that, heart-related? I think if you go back and look at that statement in the Lee study, it is part of the preamble that says this is part of the reason scientists hoped that vitamin E supplementation would have some effect on cardiovascular events. We studied it in a huge population. It has now been studied over hundreds of thousands of people, and the net benefit is zero. I mean, in fact, scientists have decided we don't even need to study vitamin E anymore, even though it's the most studied nutrient probably in the history of the United States. I see my time is up.  Good morning. Good morning, Your Honors. My name is Robert Ampleman. I represent CVS Healthcare Corporations, formerly CVS Care About Corporation, and also CVS Pharmacy, Inc. Your Honors, the critical flaw in this case is revealed in the last part of Mr. Penny's argument and in the syllogism that he puts at page 15 of the reply brief. And syllogisms are great because they isolate the premise that the arguer is relying on. And the premise that they're relying upon in this case is this. He says, if vitamin E helps maintain healthy blood vessels and supports heart health, then taking vitamin E supplements will reduce your risk of heart disease. That's the syllogism, the opening premise of the entire case. That premise that if it has a structured function that's healthy for the heart, it will necessarily have an impact on disease is antithetical to the approach that the FDA takes. But what if he's making a subsidiary? Let's say that argument's wrong. It's also the case that if it did cure disease, he would have a heck of a time saying it did not ruin health. So one thing in the studies that he's pointing to could be doing is saying, insofar as CVS needs to defend on the ground that it does counteract disease, there is a plausible dispute with everybody about that. That wouldn't be enough on its own to show it's misleading. But the complaint goes further and points to studies that show that vitamin E supplements, or vitamin E, I'm sort of exactly how to think about it, vitamin E can actually be harmful to heart health. That doesn't raise the concern that you're raising. And I think it's fair to say that the complaint is gesturing to that argument rather than raising that argument at all. So what's wrong with that argument? There's a couple things wrong. The first thing that's wrong with it is it's not what the complaint alleges. This complaint is very specific about how Ms. Hoffman says she was misled. She says in paragraph 21 of the complaint that she purchased this product and was misled to believe that it would reduce her chance or her risk of heart disease. That's this very specific thing that she claimed. The label doesn't say anything about heart disease. It also doesn't say it will make you live longer. But put that aside. Suppose I read the complaint and say she was misled to think that this was good for heart health and she's cited studies saying it's bad for heart health because it's harmful to you and there is a dispute over whether it cures disease, both things. So just taking that, I understand you disagree with the complaint. But if you read the complaint now, what's wrong with your argument that that's a valid misleading claim? Well, in addition to it not being in the complaint, it's also not in the studies. So these studies don't say none of them. Okay, let's say I disagree with none of that and I agree with Ms. Hoffman's disdain that actually there is a basis for thinking that the vitamin E is harmful. What's wrong with the claim? Well, it's hard for me to construct what the question is really because the label doesn't say it will make you live longer. The studies don't say it's bad for your heart. So what he's arguing, the parts of the studies reference harmful effects. That's what I wanted to clarify. So what the studies he's pointing to say is that in two of the studies, they conclude that among certain populations, all-cause mortality, not heart-related, just all-cause mortality among the population seemed to decrease or increase, I'm sorry, all-cause mortality increased for those who were taking the supplements. There are also studies that were included in the complaint that say the opposite, that all-cause mortality decreased. The point is they weren't saying that taking the supplements will kill you. None of them conclude that. None of them say it's bad for you. The FDA itself recognizes vitamin E as an essential nutrient. And beyond that, if you look at 21 CFR 1154G, I think it is, the FDA talks about high dosage and it approves, it sanctions high dosage antioxidants such as vitamin E. Can I just clarify what argument you're making to us? One form of argument is, as Judge Kyle was discussing with the other counsel, is if the nutrient, as a nutrient, is good for you, then you're allowed to say on the label, the nutrient is good for my health. Correct. And I take it if that's true, it wouldn't matter if the studies here were more adverse to you than you're characterizing them. That's true. Okay, so that's one possible argument. The second possible argument is that's not right. And it could be a misleading label. Even if the nutrient is good for you. But putting it on a bottle of pills and saying vitamin E is healthy could mislead one into thinking that taking the pills would improve your health. And if that's the case, then we would have to make a decision about whether they've included in their complaint studies showing that maybe taking the pills would be helpful to you. The issue is the FDA has already made that consideration. So both of us cite in our briefs the statement the FDA issued when it issued the final rule that allowed structure function claims. It's 65 Federal Register 1000. We both rely on it. There's a whole discussion in there about attempts to make the exact same argument the plaintiffs make here to the FDA. People make comments to the FDA with regard to this rule, and they say just make it a truthful and not misleading standard. That's all you need to do. Don't create this distinction between structure function and disease claims. Just say it has to be truthful and not misleading because that's a sufficient standard. And that goes to what has to be approved by FDA. It doesn't. It really doesn't. And I really commend the court to look at the first maybe 10 pages of that article to notice the rulemaking because they really go through the analysis, and they say we, the FDA, are making a decision between where to put a stake, between maximum information to customers, what can be put on the label, and potential claims under state consumer protection laws. They explicitly acknowledge that. And they say we realize there are commentators to this rule who say we should put it closer to allowing these claims to go forward. We're going to put it over here for these kinds of claims. And this distinction between structure function and disease is really important because what the FDA was saying is with a disease claim, someone might actually think they can self-medicate and not go to a doctor. But with a structure function claim, that's not the case, and consumers benefit from knowing what the structure function of the nutrient is. How do they benefit? I mean, if you put it just in real terms, when someone reads that bottle, they're going to think, if I take more of this, my heart's going to be better off. I don't think they will, because it says on the bottle that the product will not prevent, cure, or treat any disease whatsoever. Then why is it talking about heart health? It's only if you have a deficiency. No, that's not the case, Your Honor. And that's why the FDA, for example, at 101.54, talks about sanctioning high dosage supplements and mentions vitamin E. I mean, that is exactly what they're doing. They're trying to conflate the disease and the structure function claim. You keep saying that, but you're skipping over the middle position. I can understand the argument that if they don't make any argument that it's bad for you to take it. The fact that they've shown that it doesn't cure disease does not make misleading a statement that it's good for heart health, because you never represented it would cure a disease. But if they've added to that studies suggesting, even though it doesn't cure disease, it also harms you. How can a label saying this is good for heart health be other than misleading? If it harmed you, the FDA wouldn't let people sell it. That's a counterfactual. But also, it's not what she alleges. She specifically says, she doesn't say, I bought it thinking it would be good for me, but it was bad for me. What she says at paragraph 21 is, I bought it thinking it would reduce my chance of cardiovascular disease, and it doesn't. It's a very specific allegation. You can't allow plaintiffs, I don't think, to say, well, okay, I stated a specific claim. It turns out that's prampted. Let me try it again. Let me try to restate it. Because she said what was in her mind. So you're saying she amends the complaint to reframe it as, I was misled into thinking this would be helpful to me, but I realized there were studies showing it would be harmful, even though I realized it won't cure disease. She would then say a valid complaint? No, because it doesn't. If no, why not? That's what I'm trying to understand. Because the label doesn't say it will make you live longer. She doesn't say it's going to make you live shorter. That's what's worrying her. She says it's harmful. The FDA's role is to determine what's harmful to the public. The FDA has determined that vitamin E is an essential nutrient and that vitamin E supplements, including high dosage supplements, are sanctioned for being marketed as relevant to the public. It is not for this or any other court utilizing New York State law to say, okay, in any situation where New York State law exists, we're going to create a slightly different standard. The preemption here is not just is it inconsistent with federal law. It's an extremely broad preemption. It's any requirement that is not identical to the federal approach, to the federal requirements, directly or indirectly. And I think it's direct. There's no way it would not be at least an indirect impact on the way the FDA draws the distinctions between disease and structure function claims to allow that claim to go forward, particularly where the Congress structured this, right? It's not just the FDA. Congress structured 343R to include both the possibility of a structure function claim, promotes heart health, which they even talk about. I think it's maybe 25, 26 of their brief. They cite the statement in the rulemaking, supports cardiovascular health is another example where the FDA has approved it. And you can say that with this disclaimer. And it's part of their case to say, yeah, that disclaimer doesn't do any good. It's on the back of the label. It's not on the back of the label. It's a single panel. It's in Act 113 in the record. And there's no allegation that we didn't comply with the requirements. So to suggest that, yeah, but when I bought it, I thought maybe these products would help. I thought the supplement product would have that impact. That's just another way of arguing the FDA and Congress got it wrong when they drafted that disclaimer language. It's not enough. A person could still be confused. Can you help me with one issue on the preemption point? If I understand it, the preemption applies to those claims that fall within R1? Within R1 of the 343? Yeah. That's how it reads in the preemption. Is that right? The preemption statute, which I think is 343A5, I thought the text of it was that it is to R1 claims. I don't think it's limited in that way, Your Honor. It's 343A5 is the statutory state, but I didn't write down that. It refers to any requirement respecting any claim of the type described in Section 343R1. You're saying this is an R6 claim? I don't mean that to answer your question. Is it R1B or R6? Your Honor, I don't have the statute memorized. I'm not sure I can. I think it's 343R. I don't know the subpart. The structure function language is in R6. Okay. Well, this is definitely a structure function claim. We'll agree on that. So I just am puzzled why everyone seems to be treating this as clearly preempted when it's in R6, when the preemption provision refers to R1. I do not believe that the preemption is so limited. And it's not just the type of claim in R1. Again, I don't have the language in front of me, but I do know that we have multiple courts, and not just Judge Meese in this case, not just Judge Zegel and Trujillo, but in these glucosamine cases that we cited in the brief, Carthage Southern District in New York, Doherty in the Eastern District in Missouri, it's routinely applied. I'm just trying to figure out why, given the text, that would be how people are doing it. Yeah, and I'd have to go back and look, Your Honor, at the case law and where they came to that conclusion. I mean, the alternative basis for dismissal, which Judge Meese relied on, is that it just doesn't state a claim because of this mismatch. So you've got a situation where the actual allegations are, I bought the product because I thought it would reduce heart disease. The actual label says this product doesn't treat, prevent, or cure any disease. And you've got the plaintiff, who relies exclusively on studies, that didn't consider the structural function claim. I mean, at the end of the day, the reason we went through and quoted the objective section, because there's a section that says what the point of each study was at the initiation of it, and we cite it in our brief, they were looking at the disease claim. These studies considered whether you could make a disease claim with regard to vitamin E supplements. We don't make a disease claim. I mean, interestingly, a number of the studies, the Lee study that I think Judge Beata mentioned before, actually concludes that they saw a decrease in cardiovascular events for women over 65 who were taking vitamin E supplements, which debunks the notion that they're bad for you. And Ms. Coffman doesn't allege her age, but she could well fall within that group in that study who actually had fewer heart attacks. The Shackel study, which we cited, also found that there was a reduction in all-cause mortality. Are we limited to the studies that are attached or referenced in the complaint? How in the 12D6 motion do we look at any other studies? I think you're limited to what's in the complaint, Your Honor. I mean, that's the rule. They cite this, and I'm from Chicago, I should be able to pronounce his name, Bejelich study. I'm talking about studies that help you. Oh, I'm only citing the ones they have in the complaint. I'm only citing the ones they have in the complaint. I mean, at the end of the day, those are the studies. They substantiate the claim, but more to the point, they look at a different issue than what's on the label. So the plaintiff's arguments all attempt to avoid what's actually on the label, which says this product doesn't cure, prevent, or treat any disease, and this is the structure function of vitamin E. Those things are true. The complaint itself admits it's substantiated. If you look at Paragraph 20 of the complaint, it says, there are studies that show the beneficial impact of vitamin E, and then in the conclusion, the conclusory sentence, they say, but those studies are no good. They're epidemiological, or they're an error. The court doesn't have to accept that conclusion, but you can look at their admission that the studies support it. This is a substantiated claim. I thought the admission was that they support it, insofar as you don't look at the double-blind studies and the controlled studies that were also done because those studies reviewed it. Well, they don't say in the complaint that those studies are, that whatever studies they're referring to, and it's very vague in Paragraph 20, they say the studies that support vitamin E, they say, are either epidemiological or otherwise flawed. I don't know what that means. So, you know, he can get up and argue, oh, but those weren't randomly controlled. That's not alleged in the complaint, and there's no factual basis in this record to conclude that. I believe your time is up. It is. Thank you. So the point of referencing some studies that early on, and I mean very early on, studies that were found that were done at the behest of the Linus Pauling Institute. If you know anything about Linus Pauling, there's a definite agenda to those studies. They wanted to substantiate for the supplement industry that vitamin E actually did provide some benefit. The much more rigorous studies, the studies that look at the broader populations, the studies that study other studies, like a meta-analysis, every single one of them in the last decade has concluded that vitamin E supplements offer no benefit. So that's the point of suggesting that there were, at one point in time, some studies that suggested vitamin E might actually give you a heart health benefit, but it does not. The opposing counsel also mentioned that the FDA regulates supplements so that they would take a dangerous supplement off the market. That's not necessarily true. The FDA specifically does not regulate supplements. They regulate drugs, and there has to be a new drug application for something that comes out like an aspirin or something like that. So the FDA does not police the market for the safety of supplements. There was some discussion or characterization of plaintiff's allegations to again try to pigeonhole them into just her making a disease claim. I mean, we talk about in our brief how there's one paragraph in which she says that part of the way she was misled by the statements on the label was that she thought that they might also help reduce the risk of developing heart disease. But she also very clearly, in several other paragraphs, and these are all in the brief, that's why I'm not going to burn you with them right now, made false structure function claims. The lower court recognized that. Page 11 and 12 of her opinion, she recognizes that plaintiff alleged false structure function claims, and then she also characterized another one as a false disease claim. Somehow she forgot about the prior. She focused on the latter, and she got sucked into this idea that since the studies only the end points are cardiovascular disease, that they can say nothing about the actual structure function of vitamin E. Remember, in the preambles of those studies that are so important to Judge Lisi and her opinion and to CVS in their brief, those are talking about in vitro analysis of vitamin E, meaning take vitamin E out of its natural environment in the body, put it in a petri dish, and see what it does to a piece of cellular organism in there. Well, it looks like it's trapping free radicals. It looks like it's oxidizing cholesterol. Oh, if it's doing those things, it's probably going to strengthen your arteries. It's going to keep them clear of blockages. It's going to strengthen your heart. If it actually did all those things in your body, you would see some reduction, some reduction, of cardiovascular disease in the population that's been studied. But again, study after study after study shows that taking these supplements does not provide any heart health benefits. Oh, there's a lot of talk about the disclaimer. The disclaimer that this product's not intended to treat a disease only matters if the claimant is making a disease claim. Again, a disease claim separate from the structure function claim is false and misleading in part because it led me to think it might reduce my risk of heart disease. But if you're just talking about whether the structure function claim is true, the fact that the label says it's not intended to prevent a disease says nothing about the veracity of those statements. Are there any questions? My time is up. Thank you.